THE DENVER TRAMWAY COMPANY v. O'BRIEN.

1. EMPLOYER AND EMPLOYÉ.
It is the duty of an employer to provide premises which are reasonably safe for the purposes of the employment, and if there be any hidden or lurking dangers which are known to him and unknown to the employé, it is the duty of the former to notify the latter of the existence of such dangers.
2. SAME—ASSUMED RISK.
It is presumed that by the contract of employment the employé assumes the ordinary hazards of the service.
3. SAME—NEGLIGENCE.
An employer is not liable to an employé for injuries occasioned by the

act or through the negligence of a fellow servant, unless he was himself guilty of negligence in the employment of the offender.

*Appeal from the County Court of Arapahoe County.*

Mr. A. M. STEVENSON, for appellant.

Mr. E. A. BALLARD, for appellee.

THOMSON, J., delivered the opinion of the court.

This was an action for personal injuries sustained by the plaintiff through the alleged fault of the defendant. The plaintiff had judgment and the defendant appealed.

The following was the evidence given for the plaintiff: The plaintiff was employed by the defendant to haul coal to its power house. On the first day of his employment, after he had hauled five or six loads, and had just discharged the last load, steam escaped from some of the defendant's boilers near him with a loud noise, and frightened his horses. He went to their heads and seized their bridle reins to prevent them from running away, when one of the horses reared and struck him upon the head with one foot and upon one of his eyes with another, knocking him down, and inflicting severe and painful injuries upon him, which rendered him unable to work for five weeks. The boilers were so constructed and adjusted that steam was blown off automatically. The following was the testimony of one of the plaintiff's witnesses:

"Q. Mr. McNulty, what position did you hold under the defendant company on the 25th of October, 1892? A. Stationary fireman.

"Q. Will you tell me how steam was blown off from the boilers at that time? A. Why, the boilers are set with a safety valve to blow off at a certain pressure; when it gets up to that pressure, the steam escapes; set at one hundred pounds, and released at ninety-seven.

"Q. It blows off then of its own volition when it reaches a certain pressure? A. Yes, sir.

" Q. And it did then?   A. Yes, sir."

The cross-examination of the witness was as follows:

" Q. Were the engines and boilers in first-class condition, of this company, at the time of this accident in October, 1892?   Yes, sir.

" Q. In perfect condition in every respect at this power house?   A. Yes, sir."

The foregoing was the only evidence concerning the character and condition of the machinery.   When the plaintiff rested, the defendant interposed a motion for a nonsuit, which was denied.   The testimony of the defendant's witnesses was chiefly concerning the circumstances surrounding the accident.   They stated, moreover, that warning was given to the plaintiff, before the escape of the steam, that it was about to occur.   This, however, the plaintiff in his rebuttal denied; and as the verdict was in his favor, we must accept his statement as being the fact.   With this exception there was no material disagreement among the witnesses.   At the close of the evidence the defendant requested the court to instruct the jury to return a verdict for the defendant.   The court refused to so instruct, and submitted the case to the jury upon instructions which, in the view we take of the case, need not be noticed.

The subject of discussion by counsel is the law of master and servant as applicable to the facts of this case.   The law itself is so well established and understood that there is no chance for disagreement concerning it; but the circumstances to which it is sought to be applied vary, and difficulty is sometimes thus occasioned.   Considered as a legal proposition, we take no exception to the following statement by counsel for the plaintiff: " It was the duty of the appellant to provide premises that were reasonably and ordinarily safe for the performance of the work which the appellee was employed to do; or, if there were hidden and lurking dangers connected with the performance of such work, known to the company, and unknown to him, it was the clear duty of the company to inform him of the existence of such danger."

The foregoing, as far as it goes, may be accepted as correctly defining the duties of the defendant. Therefore, to entitle the plaintiff to a recovery, the defendant must have failed to provide premises that were reasonably and ordinarily safe for the performance of the work which the plaintiff was employed to do; or there must have been some hidden or lurking danger known to the defendant, and unknown to him, of which it failed to inform him. *First.* There was no evidence that the premises, exclusive of the boilers, were not entirely safe for the plaintiff's work, or for any purpose. The boilers emitted steam and frightened the plaintiff's horses, but we do not think that counsel means to contend that, to render the premises safe, the defendant should have provided boilers from which there could be no escape of steam. The emission of steam was an incident, and, as it seems, a necessary incident, of the operation of the boilers. The testimony for the plaintiff was that the boilers were in first-class and perfect condition in every respect; and we find no evidence that any duty connected with their safety, or with the safety of the premises in so far as that depended upon their condition, was neglected. *Second.* What was the hidden or lurking danger known to the defendant, and unknown to the plaintiff, of which it should have informed him, but did not? There was none, unless it was the liability of the boilers to blow off steam at uncertain and irregular intervals. There was some regulation or adjustment of the boilers by means of which steam escaped when a certain amount of pressure was reached; but there was no proof that the contrivance for the automatic escape of steam was a peculiarity of these boilers. For aught that appears, their construction and characteristics were the same as those of boilers generally, and they were made and operated precisely as other boilers are made and operated. If such was the case—and if it was not, the burden was on the plaintiff to prove that it was not,—their liability to blow off steam was not a hidden or lurking danger within the meaning of the law, or concerning which it was the defendant's duty to inform the plaintiff in the first

instance.   So far as appears, it was one of the ordinary haz-
ards of the service, and the presumption of law is that such
hazards are assumed by the servant in his contract of employ-
ment.   Wood's Master and Servant, sec. 306.

But, according to the plaintiff's own testimony, he had
some acquaintance with engines and boilers before accept-
ing this employment, and he knew that they blew off steam
from time to time ; although, as he expressed himself, he did
not know that they did so " of their own accord."   He there-
fore needed no information that an escape of steam might be
expected from these boilers ; and the possibility or probability
of its escape while his team was in proximity to them was
part of the risk which he took when he entered the service.
Now, we do not understand how the fact that steam escaped
from these boilers by the automatic action of the machinery
made his risk or danger any greater that it would have been
otherwise.   It was the noise of the escaping steam, and not
the manner in which it escaped, that frightened his horses.
If the steam had been caused to escape by the direct act of
the engineer, or person in charge, without warning of what
he was about to do, the effect would have been the same.
That person could have announced that he was about to
open the valve and let the steam blow off, and thus given
the plaintiff an opportunity to provide against accident ; but
the testimony shows that the person in charge of these boil-
ers knew when steam was about to escape, and could have
warned the plaintiff and put him upon his guard, as well and
effectually as if he himself had caused the escape of the steam.
The plaintiff knew that the boilers might at any time blow
off steam, and that whatever might be their character, or the
manner of their operation, the escape might come when he
was unprepared for it, unless he was notified beforehand that
it was coming.   It was, perhaps, the duty of the defendant's
servant in charge of these boilers to warn the plaintiff of the
approaching escape of steam, and his failure to do so was
possibly negligence ; but if it was negligence, it was the
negligence of a fellow servant with the plaintiff.   The rela-

tions of the two persons to each other were clearly those of fellow servants; and a master is not liable to a servant for injuries occasioned by the act, or through the negligence, of a fellow servant, unless he was himself guilty of negligence in the employment of the offending servant. Wood's Master and Servant, sec. 416. This case presents no question of such negligence on the part of the defendant. The defendant's motion for a nonsuit should have been allowed; and that motion having been denied, the defendant's subsequent request for the direction of a verdict in its favor should have been granted. The ruling in each instance was erroneous, and the judgment must be reversed.

*Reversed.*